## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

Darren and Laura VanPuymbrouck        )
                                      )
                Plaintiffs            )
                                      )
                                      )        JURY DEMANDED
                        v.            )
                                      )
James Hunsberger and                  )
Steven Starner                        )
                                      )
                Defendant             )
                                      )

## COMPLAINT AT LAW

Plaintiffs, Darren and Laura VanPuymbrouck ("Plaintiffs"), by and through their

undersigned counsel, complaining of Defendants James Hunsberger and Steven Starner and

seeking registration of property in their names pursuant to adverse possession, the law of

acquiescence, and quite title, and for money damages caused by the Defendants' statutory

conversion, trespass, and willful silent fraud, state as follows:

## FACTS

1.      Plaintiffs purchased the four-bedroom, three bath house with barn located on 5

acres located at 1993 Lynch Road, Benton Harbor, Michigan 49022 more than18 years ago in

April 2004.  (The structures and property collectively referred to as the "Home"). The Home was

purchased from the Bloom family who occupied the residence for approximately five years.

Prior to that time, the Home was constructed and occupied by the Kelly family from

approximately 1973 to 1998.  Due to a flood in 2018, Plaintiffs rebuilt the entire interior of the

house at an expanse of approximately $300,000.

2.      The house is situated on a rectangular lot facing south with a separate barn located

to the north and east of the house.  From east to west at the entrance from Lynch Road, the

Home's eastern boarder consists of a 12' wide grass driveway, a 12' wide cement driveway, and

a row of 10 trees from 75-100 feet tall under which extensive landscaping was installed in 2021.

     3.     The cement driveway extends north to a cement parking pad next to the house on

the east.  The grass driveway extends further north leading to the barn, an ancient apple orchard,

a natural marsh, woods, and a partially erected tree stand. The total length of the grass driveway

from the entrance on Lynch Road to the end of the Home is 726'.   There is no other means by

which Plaintiffs can access their house, barn, apple orchard, marsh, woods and tree stand by

vehicle.

     4.     When the Kellys purchased the property and before they built the house, barn, and

grass and cement driveways, they filed a survey with the Register of Deeds for Berrien County,

Michigan in 1973.  That survey established a 300' foot-wide lot along its southern border on

Lynch Road.  300' from the western edge of the property falls in the center of the cement

driveway that the Kellys built in 1973.  Thus, approximately 18 feet consisting of approximately

½ the width of the cement driveway and the entire grass driveway was erected on property

owned by Defendant Starner to the east of the Home. (the "Subject Property")

     5.     The Kelly family knowingly and intentionally took possession of the Subject

Property nearly 50 years ago and used, improved, maintained, and occupied the Subject Property

to the exclusion of Defendant Starner in a visible, open, notorious, exclusive, continuous, and

hostile manner for 26 years by:

          a.   erecting a cement driveway in the Subject Property;

          b.   erecting an earthen berm defining the eastern border of the grass driveway of
               the Subject Property;

    c.   planting a trumpet vine and lilac at the base of the utility pole in the grass driveway of the Subject Property;

    d.   continuously mowing, fertilizing, repairing and removing moles from the grass driveway of the Subject Property;

    e.   continuously driving and parking vehicles on the cement and grass driveways; and

    f.   continuously plowing snow from the cement driveway of the Subject Property;

6.      In response, Defendant Starner acquiesced to the Kelly family's exclusive use of the Subject Property by planting his first row of blueberry crops east of the grass driveway.  At no time since 1973 have any corps been planted on the Subject Property.

7.      Defendant Starner further acquiesced to the Kelly's exclusive use of the Subject Property by never:

    a.   planting or maintaining bushes in the Subject Property;

    b.   driving or parking vehicles on the cement driveway;

    c.   plowing snow from the cement driveway;

    d.   taking any action legal or otherwise to challenge the Kelly's exclusive possession and use of the Subject Property; or

    e.   granting the Kelly family permission to occupy and use the Subject Property.

8.      Thus, the Kelly family acquired ownership of the Subject Property 15 years after they began to exclusively occupy and utilize the Subject Property to the exclusion of all others including Defendant Starner in 1988.

9.      Thus, based on the Kelly family's ownership of the Subject Property, the Bloom

family acquired ownership of the Subject Property when they purchased the Home in 1998 and Plaintiffs acquired ownership of the Subject Property when they purchased the Home in 2004 from the Bloom family.

10. Following the Kelly family's sale of the Home, the Bloom family and Plaintiff continued the very same ownership and exclusive control over the Subject Property established by the Kelly family continuously for 19 years up to the present. Thus, when Defendant Hunsberger purchased the Starner farm, it did not include the Subject Property.

11. Moreover, Plaintiffs further established their exclusive ownership of the Subject Property by storing an RV on the Subject Property for several years, planting 10 rows of blackberries and raspberries on the Subject Property, and having a large dumpster located on the Subject Property for ongoing repairs to the barn.

12. Plaintiffs further established their exclusive ownership of the Subject Property when, in approximately 2017, the trumpet vine and lilac planted by the Kellys at the base of the utility pole grew to contact the transformer at the top of the pole.  An electrical short caused the transformer to fail, disrupting the neighbor's electrical service.  The Plaintiffs, not Defendant Starner, scaled the pole to remove and cut back the vine and lilac bushes to avoid such contact with the transformer and another disruption of their neighbor's electrical service. Defendant Starner play no role in that vital work.

13. Just as importantly, Defendant Starner acquiesced in the Bloom family's and Plaintiffs' exclusive ownership and control of the Subject Property just as he acquiesced to the Kelly family's ownership and exclusive use of the Subject Property by:

        a.   continuing to maintain and harvest blueberry plants only east of the Subject Property;

b.  making no effort to maintain the grass driveway while the Bloom family and Plaintiffs had the grass cut and moles removed continual for 19 years;

c.  making no objection to the Bloom family's and Plaintiffs' continuous use of the grass driveway to access the barn, orchard, marsh, woods, and tree stand;

d.  making no effort to plow the snow off the cement driveway;

e.  making no effort to maintain the vine or lilac bushes in the grass driveway;

f.  making no objection to Plaintiff's storage of a large and very obvious recreational vehicle on the Subject Propert; and

g.  making no objection to the Plaintiff's planting of 10 rows of black and raspberry bushed on the Subject Property.

14.     Defendant Starner never granted the Plaintiffs permission to possess or use the Subject Property and never took any action to prevent the Plaintiffs from possessing and using the Subject property for more than 15 years.

15.      In 2019, Defendant Hunsberger relocated from California and began to negotiate his purchase of Defendant Starner's property.

16.     In connection with that transaction, Defendant Hunsberger employed a surveyor to identify the boundary-lines of Starner's property.  As a result, a surveying stake was placed in the middle of the cement driveway on the Subject Property by an agent of the Defendants in August 2019.

17.     Thus, Defendant Hunsberger had actual knowledge of Plaintiffs' claim of ownership of the Subject Property before he purchased the property owned by Defendant Starner because the survey stake was in the middle of an existing driveway.

18.     Moreover, Plaintiffs contacted Defendant Starner as soon as they became aware

of the surveyor's stake in the middle of their cement driveway that they removed immediately. Tellingly, Defendant Starner admitted that he was expecting Plaintiffs to call when they saw that stake and that the Kelly family built and used the cement and grass driveways knowing they were on his land and against his will.

19.     Even though Defendant Hunsberger knew that the grass and cement driveways were the property of the Plaintiffs by virtue of the surveyor's stake placed in the middle of the cement driveway, he proceeded to purchase Starner's land without ever asserting to the Plaintiffs that he was purchasing the Subject Property.

20.     Instead, Defendants Hunsberger and Starner conspired to take control of the Subject Property by acts of conversion and trespass.

21.     Beginning in May 2022, approximately 2 ½ years after he purchased Defendant Starner's property, Defendants Hunsberger and Starner began to convert and trespass on Plaintiffs' property pursuant to their conspiracy to defraud the Plaintiffs by:

      a.)  operating heavy equipment on the Subject Property to cut grass that had been cut by the Plaintiffs and their predecessors for nearly 50 years;

      b.)  operating heavy equipment on the Subject Property to force tree limbs off the Subject Property in the Plaintiff orchard;

      c.)  removing and destroying signage on the Subject Property;

      d.) entering upon the Subject Property to threaten Plaintiffs grass-cutting service providers with arrest; and,

      e.) entering upon the Subject Property demanding that the company from which the Plaintiffs had ordered a dumpster for their barn rehabilitation project remove the dumpster from the Subject Property.

22.     Defendant Hunsberger does not reside on the property he bought from Defendant Starner located in Benton Harbor Michigan; he resides in a home overlooking Lake Michigan in St. Joseph, MI.  Nevertheless, Defendant Hunsberger has threatened that if he is successful in converting and trespassing on the Plaintiffs' property, he will construct a road on the Subject Property extending from Lynch Road the full length or Plaintiffs' property and beyond to a section of his property that is easily accessible by roads existing on Defendant Hunsberger's property.

23.     He has further threatened to open a fruit picking enterprise and have the public park along this new road within feet and in plain view of Plaintiffs' house, hot tub, barn, orchard, marsh, woods, and tree stand.  The fact that Defendant Hunsberger lives elsewhere, allows him to act with impunity in his brazen attempts to convert and trespass on Plaintiffs' land.

24.     Defendant Hunsberger's actions are also hostile to 50 years of the Subject Property's continuous use as residential property, even though he only appeared on the scene two short years ago.

25.     The amount in controversy consists of several components, including the value of the Subject Property's .30 acres.  That property is uniquely valuable because it is the only path of entry to the Plaintiffs' house, parking pad, barn, orchard, marsh, woods, and tree stand by vehicle.  Without the Subject Property, an automobile cannot be driven into any portion of Plaintiffs'' property.  In addition to Plaintiffs' recent expenditure of $300,000 to rehabilitate the interior of the house and $20,000 in landscaping, she has contracted to rehabilitate the barn at a cost of $80,000.  Thus, the value or the Subject Property to Plaintiff easily exceeds $75,000.

26.     In addition, the amount in controversy includes the diminution in the value of the Home because of the loss of the appearance of Plaintiffs' Home commonly referred to as "curb

appeal."  Injecting a road running the full length of Plaintiffs' property on which the public would be welcome to park while picking blueberries on the Defendant's property, drastically alters the aesthetic of the Home that is hostile to its residential character.  The diminution in value caused by this alteration exceeds $75,000 alone.

### PARTIES

27.     Plaintiffs, Darren and Laura VanPuymbrouck, are citizen of the state of Illinois residing at 2524 N. Burling Street, Chicago, IL 60614.

28.     Defendant James Hunsberger is a citizen of the state of Michigan residing in Berrien County, Michigan.

29.     Defendant Steven Starner is a citizen of the state of Michigan residing in Berrien County, Michigan.

### JURISDICTION

30.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this matter because it involves citizens of different states and the amount in controversy exceeds $75,000.

### VENUE

31.     Venue is proper in this Court pursuant to 28 U.S. Code § 1391(b)(1) because Defendant Hunsberger is a resident of the State in which this district is located.

32.     Venue is proper in this Court pursuant to 28 U.S. Code § 1391(b)(1) because Defendant Starner is a resident of the State in which this district is located.

33.     Venue is proper in this Court pursuant to 28 U.S. Code § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action, is situated in this judicial district.

## COUNT I-ADVERSE POSSESSION BY THE KELLYS

34.     Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth here and adopts them for purposes of this Count.

35.     Pursuant to MCL 3.411, Plaintiffs files this Complaint to assert their ownership rights over the Subject Property by adverse possession.

36.     MCL 600.2932(1) and the cases interpreting that statute establish that adverse possession is established under Michigan law by satisfying the following elements: (1) "actual" possession, not occasional or periodic entry upon land; (2) "visible" possession not concealed or disguised; (3) "open" acts of ownership, including for example construction of a driveway; (4) "notorious" occupation of real property so that the original property owner had every opportunity to notice the behavior or the adverse possession and take action before the expiration of the 15 year adverse possession period; (5) "exclusive" acts of dominion demonstrating exclusive ownership of the subject property; (6) "continuous" un-interrupted 15 year period of possession; and (7) "hostility" through use of the land that is inconsistent with the rights of the original property owner.

37.     As set forth above, Plaintiff has pled and will prove all seven elements of adverse possession under Michigan law.

38.     As alleged above, the Kelly family had for more than 15 years maintained actual possession and use of the Subject Property through the use, maintenance, improvement of the cement and grass driveways.

39.     As alleged above, the Kelly family had for more than 15 years maintained actual possession and use of the Subject Property through the use, maintenance, and improvement of the cement and grass driveways.

40.      As alleged above, the Kelly family had possessed the Subject Property visibly for more than 15 years through the use, maintenance, and improvement of the cement and grass driveways.

41.      As alleged above, the Kelly family's possession of the Subject Property was open and never hidden from the original owner by virtue of a cement and grass driveway on the Subject Property and the Kelly family's continual use of both for more than 15 years.

42.      As alleged above, the Kelly family's occupation of the Subject Property was notorious in that it was maintained in a manner that anyone could observe that the Kelly family were the people using the land as the true owner of the property.

43.      As alleged above, the Kelly family's possession of the Subject Property was exclusive in that they continually and exclusively maintained, utilized, and occupied the Subject Property and the original owner did not utilize or maintain the Subject Property.

44.      As alleged above, the Kelly family's possession of the Subject Property was continuous from 1973 to 1999 or for 26 years.

45.      As alleged above, the Kelly family' possession of the Subject Property was hostile through their use of the Subject Property in a manner inconsistent with the rights of the original property owner and without that owner's permission including the existence of the cement and grass driveways and their continuous maintenance and use of both.

**WHEREFORE**, the Plaintiffs, Darren and Laura VanPuymbrouck, respectfully request that this Court entered judgment in their favor and against the Defendants James Hunsberger and Steven Starner and enter an Order registering the Subject Property in their names and for such other and further relief to which they are justly entitled under the law.

## COUNT II-ADVERSE POSSESSION BY THE VANPUYMBROUCKS

46.    Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth here and adopts them for purposes of this Count.

47.    Pursuant to MCL 3.411, Plaintiffs files this Complaint to assert their ownership rights over the Subject Property by adverse possession.

48.    MCL 600.2932(1) and the cases interpreting that statute establish that adverse possession is established under Michigan law by satisfying the following elements: (1) "actual" possession, not occasional or periodic entry upon land; (2) "visible" possession not concealed or disguised; (3) "open" acts of ownership, including for example construction of a driveway; (4) "notorious" occupation of real property so that the original property owner had every opportunity to notice the behavior or the adverse possession and take action before the expiration of the 15 year adverse possession period; (5) "exclusive" acts of dominion demonstrating exclusive ownership of the subject property; (6) "continuous" un-interrupted 15 year period of possession; and (7) "hostility" through use of the land that is inconsistent with the rights of the original property owner.

49.    As set forth above, Plaintiff has pled and will prove all seven elements of adverse possession under Michigan law.

50.    As alleged above, the Plaintiffs have possessed the Subject Property visibly from 2004 to the present or for 18 years through the use, maintenance, and improvement of the cement and grass driveways.

51.    As alleged above, the Plaintiffs possession of the Subject Property has been open and never hidden from the original owner by virtue of a cement and grass driveway on the Subject Property and Plaintiffs' continual use of both for more than 15 years.

52.     As alleged above, the Plaintiffs' occupation of the Subject Property has been notorious in that it was maintained in a manner that anyone could observe that she was the person using the land as the true owner of the property.

53.     As alleged above, the Plaintiffs' possession of the Subject Property has been exclusive in that they continually and exclusively maintained, utilized, and occupied the Subject Property in the original owner did not utilize or maintain the Subject Property.

54.     As alleged above, the Plaintiffs' possession of the Subject Property has been continuous for more than 15 years from April 2004 through the present.

55.     As alleged above, the Plaintiffs' possession of the Subject Property has been hostile through their use of the Subject Property in a manner inconsistent with the rights of the original property owner and without that owner's permission including the existence of the cement and grass driveways and their continuous maintenance and use of both.

**WHEREFORE**, the Plaintiffs, Darren and Laura VanPuymbrouck, respectfully request that this Court entered judgment in their favor and against the Defendants James Hunsberger and Steven Starner and enter an Order registering the Subject Property in their names and for such other and further relief to which they are justly entitled under the law.

## COUNT III-ACQUIESCENCE

56.     Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth here and adopts them for purposes of this Count.

57.     As alleged above, for a continuous period for more than 15 years, beginning in 1973 and continuing uninterrupted through 2022, Defendants Starner and Hunsberger treated the eastern edge of the grass driveway as the boundary line between their property and that of the House.

58.     Most notably, among Defendant Starner's and Hunsberger's many acts of acquiescence alleged above, they planted and maintained their first row of crops east of the eastern edge of the grass driveway and never planted any crops west of that line of division.

59.     When Defendant sold his property to Defendant Hunsberger in the Fall 2019, the boundary line had already been established and the Plaintiff owned the Subject Property.

**WHEREFORE**, the Plaintiffs, Darren and Laura VanPuymbrouck, respectfully request that this Court entered judgment in their favor and against the Defendants James Hunsberger and Steven Starner and enter an Order registering the Subject Property in their names and for such other and further relief to which they are justly entitled under the law.

## COUNT IV-QUITE TITLE

60.     Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth here and adopts them for purposes of this Count.

61.     Pursuant to MCL 600.2932, Plaintiffs brings this action to quiet title because they have possession and superior interest above all other parties claiming an interest in the Subject Property, including the Defendants.

62.     As alleged above, Plaintiffs have superior interest above all other parties claiming an interest in the Subject Property because that property became the property of the Kelly family through adverse possession and acquiescence as early as 1985.

63.     Plaintiffs acquired the Subject Property when they purchased the Home from the Bloom family who owned the Subject Property through their purchase of the Home from the Kelly family.

64.     In the alternative, Plaintiffs acquired the Subject Property through their own adverse possession of that property from 2004 through 2022.

65.     Defendant Hunsberger neither paid for nor acquired title to the Subject Property when he purchased Defendant Starner's land because Defendant Starner did not own the Subject Property at the time of that sale.

**WHEREFORE**, the Plaintiffs, Darren and Laura VanPuymbrouck, respectfully request that this Court entered judgment in their favor and against the Defendants James Hunsberger and Steven Starner and enter an Order registering the Subject Property in their name and for such other and further relief to which she is justly entitled under the law.

<u>**COUNT V-STATUTORY CONVERSION (MCL § 600.2919a)**</u>

66.     Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth here and adopts them for purposes of this Count.

67.     Defendants Starner and Hunsberger knew at the time of their sale and purchase of Defendant Starner's property that Defendant Starner did not also own the Subject Property.

68.     Nevertheless, Defendants Starner and Hunsberger converted the Plaintiff's property by purporting to sell and buy the Subject Property and use the property for their own purpose.

69.     As a direct and proximate cause of the Defendants' conversion in violation of MCL § 600.2919a of the Plaintiff's property, the Plaintiff has suffered damage including the destruction of their personal property on that land, the obstruction of Plaintiffs' use of their land, and their emotional distress.

**WHEREFORE**, the Plaintiffs, Darren and Laura VanPuymbrouck, respectfully request that this Court entered judgment in their favor and against Defendants Hunsberger and Starner and enter an Order awarding them damages in excess of $75,000, treble damages, and Plaintiffs' costs and attorney's fees, and for such other relief to which they are justly entitled.

## COUNT VI-TRESSPASS TO LAND

70.     Plaintiffs incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth here and adopts them for purposes of this Count.

71.     Plaintiffs owned and possessed the Subject Property.

72.     Defendants Hunsberger and Starner physically invaded the Plaintiffs' real property including by bring heavy equipment on to the Subject Property, by placing stakes in the cement driveway of the Subject Property, by removing and destroying signage on the Subject Property, by coming onto the Subject Property and threatening the Plaintiff's grass cutting service providers with arrest, by coming onto the Subject Property and threatening the Plaintiff's dumpster provider.

**WHEREFORE**, the Plaintiffs, Darren and Laura VanPuymbrouck, respectfully request that this Court entered judgment in their favor and against the Defendants James Hunsberger and Steven Starner finding that the Defendants trespassed on the Subject Property in violation of MCL §750.552 and awarding the Plaintiffs actual and/or nominal damages, treble damages pursuant to §21.117, and their costs and attorney's fees pursuant to §21.118.

## COUNT VI-CIVIL CONSPIRACY

73.     Plaintiffs incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth here and adopts them for purposes of this Count.

74.     "A civil conspiracy is a combination of two or more persons, by some concerted action, accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advocacy Org for Patients & Providers v Auto Club Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003), aff'd 472 Mich 91 (2005).

75.     As alleged herein, Defendants Hunsberger and Starner engaged in concerted actions for the unlawful purpose of trespassing on and converting the Subject Property for their profit and use including: (1) their agreement to sell and buy the Subject Property with knowledge that it was owned by the Plaintiffs; (2) their operation of heavy equipment on the Subject Property to cut grass that had been cut by the Plaintiffs and their predecessors for nearly 50 years; (3) their operation of heavy equipment on the Subject Property to force tree limbs off the Subject Property in the Plaintiffs' orchard; (4) their removal and destruction of signage on the Subject Property; (5) their entry upon the Subject Property to threaten Plaintiffs grass-cutting service providers with arrest; and (6) their entry upon the Subject Property demanding that the company from which the Plaintiffs had ordered a dumpster for their barn rehabilitation project remove the dumpster from the Subject Property.

76.     In the alternative, the Defendants engaged in wrongful acts of trespass and conversion for a lawful purpose.

**WHEREFORE**, the Plaintiffs, Darren and Laura VanPuymbrouck, respectfully request that this Court entered judgment in their favor and against the Defendants James Hunsberger and Steven Starner finding that the Defendants engaged in a civil conspiracy to trespass on the Plaintiffs property and awarding the Plaintiffs punitive damages, their costs and attorney's fees, and for such further relief to which the Plaintiffs are justly entitled.

## COUNT VII-SILENT FRAUD

77.     Plaintiffs incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth here and adopts them for purposes of this Count.

78.     Defendants knew by their placement of a boundary stake in the middle of the Plaintiffs' cement driveway that the Plaintiffs had an ownership interest in the Subject Property.

79.     Defendants, therefore, were under a legal duty to disclose to the Plaintiffs that they intended to sell and purchase the Subject Property owned by the Plaintiffs.

80.     The Defendants failed to disclose their intent to sell and purchase the Subject Property owned by the Plaintiffs to induce the Plaintiffs into not seeking to take legal action to block that sale.

81.     The Defendant's failure to disclose their intent to sell and purchase the Subject Property owned by the Plaintiffs was misleading because Defendant Starner admitted that the Kelly family had acquired the Subject Property through adverse possession decades earlier.

82.     The Defendants knew that not disclosing their intent to sell and purchase the Subject Property owned by the Plaintiffs would be misleading because it disguised their intent and conspiracy to trespass and convert that property once that sale was complete.

83.     The Plaintiffs relied on the Defendants' failure to disclose their intent to sell and purchase the Subject Property owned by the Plaintiffs by not blocking the sale and purchase of the Subject Property owned by the Plaintiffs.

84.     The Defendants' silent fraud was perpetrated willfully, maliciously wantonly, or with reckless disregard for the Plaintiffs' rights.

85.     As a direct and proximate result of the Defendants silent fraud, the Plaintiffs have suffered mental anguish, humiliation, outrage, and increased injury to their feelings for which they are entitled to recover exemplary damages in addition to their actual in addition to their actual damages for emotional distress.

**WHEREFORE**, the Plaintiffs, Darren and Laura VanPuymbrouck, respectfully request that this Court entered judgment in their favor and against the Defendants James Hunsberger and Steven Starner finding that the Defendants engaged in silent fraud willfully, maliciously

wantonly, or with reckless disregard for the Plaintiffs' rights and awarding the Plaintiffs

compensation for their mental anguish, exemplary damages, their costs and attorney's fees, and

for such further relief to which the Plaintiffs are justly entitled.

Dated: July 27, 2022                        /s/ Darren Malek
                                            Darren M. Malek (P57443)
                                            Veritas Law Group
                                            107 W. Michigan Avenue, Suite 500
                                            Kalamazoo, MI 49007 / (269) 270-3500